**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

ROBERT PRATT                                                   PLAINTIFF

versus                                    CIVIL ACTION NO. 2:08cv13-MTP

DR. RON WOODALL, et al.                             DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [45] filed by Defendants. The court, having considered the submissions of the parties and the applicable law, finds that the Motion [45] should be GRANTED.

### FACTUAL BACKGROUND

Plaintiff, Robert Pratt, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on January 14, 2008. Plaintiff is currently incarcerated at the South Mississippi Correctional Institution ("SMCI") after having been convicted of selling cocaine in Lauderdale County. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff claims that Defendants Dr. Ron Woodall and Mike Hatten denied him adequate medical treatment in violation of the Eighth Amendment.[2]

On September 22, 2008, Dr. Woodall filed his Motion for Summary Judgment [45] and supporting Memorandum [46], and Mike Hatten filed his Joinder [47] in the Motion [45]. Plaintiff filed his Response [52] [53] in opposition to the motion on November 6, 2008.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on June 23, 2008. The transcript from Plaintiff's *Spears* hearing is cited herein as "Tr. __." *See* Transcript [39].

[2] Plaintiff also originally named Christopher B. Epps as a Defendant. Mr. Epps was dismissed by Order [16] dated May 8, 2008.

# STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

<u>Denial of Adequate Medical Care</u>

Through his complaint, and as clarified during his *Spears* hearing, Plaintiff claims that Defendants denied him adequate medical treatment in violation of the Eighth Amendment.

3

Specifically, Plaintiff alleges that Defendants failed to provide him proper medical treatment for cirrhosis of the liver and hepatitis. *See* Scheduling and Case Management Order [36].

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

A supervisory prison official may only be held liable for the actions of a subordinate if he "'affirmatively participate[s] in acts that cause constitutional deprivation' or 'implement[s] unconstitutional policies that causally result in plaintiff's injury.'" *Johnson v. Scott*, 31 Fed. Appx. 836, 2002 WL 243359, at *1 (5th Cir. Jan. 23, 2002) (quoting *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). A prisoner is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

*Dr. Woodall*

Plaintiff claims that Dr. Woodall, a staff physician at SMCI employed by Wexford Health Sources, failed to provide him with adequate medical treatment for his liver problems for a year, despite his knowledge that Plaintiff had cirrhosis of the liver. Dr. Woodall's failure to properly treat Plaintiff allegedly resulted in him contracting Hepatitis C. Plaintiff claims his condition continued to deteriorate, and he was ultimately sent to the hospital in Forrest, Mississippi.[3] He alleges that the physician he saw in Forrest wrote a letter to Dr. Woodall, recommending that Plaintiff see a physician in Jackson, Mississippi. Dr. Woodall allegedly denied the request. He further claims that Dr. Woodall continued to give him Vicodin for his pain, and that the Vicodin was bad for his liver. After complaining to Dr. Woodall about bleeding from his rectum, he began to prescribe him Tylenol instead, which made him even worse. (Tr. at 10-12.)

The record reflects that when Plaintiff arrived into MDOC custody at Central Mississippi

---

[3]As discussed below, Plaintiff apparently meant Forrest General Hospital in Hattiesburg, Mississippi.

5

Correctional Facility ("CMCF") on April 21, 2006, he had cirrhosis of the liver, Hepatitis C, and diabetes, among other medical problems. *See* Ex. A to Motion [45-3] at 15. It appears that Plaintiff was transferred to SMCI on or about May 30, 2006. *See* Ex. A to Motion [45-4] at 19. The record reflects that Plaintiff had blood work done--a Hepatic Function Panel-- on June 14, 2006, July 11, 2006, and August 15, 2006. *Id.* at 28-30. Plaintiff was seen in the chronic care clinic at SMCI on June 22, 2006, for his chronic liver disease, where he was examined and educated on chronic liver care and Hepatitis C. *Id*. at 9-12. The goals were to monitor Plaintiff's disease, optimize his treatment regimens, and provide self-management education. The record reflects that Plaintiff had a fair response to the treatment, and was to visit the chronic care clinic every three months. *Id*. at 12. The records further indicate that Plaintiff's condition improved. *Id.* The records also reveal that Plaintiff was either a "no show" or refused treatment on seven occasions from June 20-July 11, 2006. *Id.* at 7.

On September 21, 2006, Plaintiff was seen by Dr. Jennifer Crist at Forrest General Hospital, apparently the "hospital in Forrest" Plaintiff referred to during his *Spears* hearing,[4] with complaints of abdominal pain over the prior several weeks. An x-ray indicated no liver lesions, but revealed gallstones. Dr. Crist's diagnosis was symptomatic cholelithiasis (gallstones). Lab work performed at Forrest General Hospital indicated Plaintiff's lipase[5] and hepatic panel was slightly elevated. He was given Morphine and Zofran and was discharged

---

[4]*See* Tr. at 11.

[5]A lipase test is usually performed to test liver function and for pancreatitis. *See Dorlands Medical Dictionary*:lipase test, http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/eight/000106933.htm (last visited June 5, 2009).

6

with a prescription for Vicodin. He also met with Dr. Romoro to discuss surgery. *See* Ex. A to Motion [45-5] at 7-16.

On October 10, 2006, Plaintiff returned from an off-site follow-up appointment, where surgery was recommended. *Id.* at 17. On October 12, 2006, Plaintiff underwent a laparoscopic cholecystomy (gall bladder surgery) with liver biopsy at Bolivar Medical Center. Examination of the intra-abdominal contents failed to reveal any abnormalities except for the presence of anodular cirrhosis of the liver. *Id.* at 3-4. The results of the liver biopsy indicated no evidence of hepatocellular dysplasia or malignancy. *Id.* at 5.

The record reflects that Plaintiff continued to be treated for his various ailments, including Hepatitis C and cirrhosis, after his surgery. *See* Exs. A-C to Motion [45-2] - [45-7]. Plaintiff's liver enzymes were regularly checked and he was provided a special diet for Hepatitis C and/or lay-in meals. *See* Exs. A-B to Motion [45-2] - [45-6]; [45-2] at 29, 38-39, [45-5] at 18, 20.

In his motion and supporting affidavit, Dr. Woodall states that he is familiar with the medical treatment provided to Plaintiff at SMCI, and that he believes he has been "treated appropriately for his Hepatitis C, Cirrhosis and Diabetes." Affidavit [45-7] at ¶ 3. He further states that Tylenol and/or Vicodin are frequently used in the treatment of pain and were appropriate medications for Plaintiff for the treatment of his pain associated with cirrhosis. *Id.* at ¶ 4. Dr. Woodall also states that he never told Plaintiff he needed a liver transplant, and that a liver transplant would not be a medical option for Plaintiff because in addition to cirrhosis, he has Hepatitis C and diabetes, which would eliminate him as a potential transplant recipient. *Id.* at ¶¶ 5-6.

In his opposition [52] [53], Plaintiff claims he has been denied a liver transplant, and that Defendants have denied and/or delayed him adequate medical treatment for his other conditions--Hepatitis C, cirrhosis, and diabetes.[6] Plaintiff also makes conclusory statements that genuine issues of material fact exist as to his claims.[7] However, in order to avoid summary judgment, "Plaintiff must show 'specific facts' showing a genuine factual issue for trial. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argument' are not sufficient." *Mahoney v. City of Jackson*, No. 3:07cv173-DPJ-JCS, 2008 WL 2990906, at *5 (S.D. Miss. July 25, 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

The record reflects that Plaintiff has been treated by multiple doctors, including Dr. Woodall, on multiple occasions for his various ailments. *See* Exs. A-C to Motion [45-2] - [45-7]. The record reflects that Plaintiff received medical treatment, including surgery, each time he submitted a sick-call request regarding complaints about his "liver" or abdominal pain.[8] *See*

---

[6]Plaintiff mentions for the first time in his response that he was denied and/or delayed adequate medical treatment for his diabetes. This claim was not alleged in Plaintiff's complaint and was not discussed during his *Spears* hearing. Accordingly, this claim is not pending before the court and will not be addressed herein.

[7]Plaintiff's "affidavit" of disputed facts merely states that there are genuine issues of material fact as to the following:

1. Whether the plaintiff received "adequate" medical care for his "serious" medical needs.
2. Whether the plaintiff was "denied" medical care for his "serious" medical needs.
3. Whether the plaintiff was "delayed" medical care for his "serious" medical needs.

*See* "Plaintiff's Statement of Disputed Facts" [53].

[8]For example, on July 22, 2007, Plaintiff submitted a sick-call request stating that his "liver [was] causing [him] severe pain that's becoming unbearable." *See* Ex. A to Motion [45-3] at 4. The record reflects that Plaintiff was "referred to provider" and was seen that day. *See* Ex. A to Motion [45-2] at 34. Dr. Woodall ran a complete metabolic panel three days later. *See* Ex.

8

Exs. A to Motion [45-2] at 47-48; [45-3] at 4, 26-28, 46, 47; [45-5] at 3-17. There is no evidence that Dr. Woodall was deliberately indifferent to Plaintiff's serious medical needs. Specifically, there is no evidence that Dr. Woodall ever denied Plaintiff medical care, or ever denied a recommended surgery. There is also no evidence that Dr. Woodall was ever deliberately indifferent in delaying Plaintiff's medical care. Plaintiff's allegation that Dr. Woodall's delay in treating his cirrhosis caused him to get Hepatitis C is simply unfounded; the record establishes that Plaintiff already had Hepatitis C when he arrived at SMCI. *See* Ex. A to Motion [45-3] at 15. Plaintiff's disagreement with the medication prescribed by Dr. Woodall, or his method of examination, treatment, and/or diagnosis for his ailments, simply does not rise to the level of a constitutional violation. *See Norton*, 122 F.3d at 292. Even assuming Dr. Woodall should have prescribed a different pain medication, such conduct constitutes negligence, which does not

---

A to Motion [45-3] at 28. Plaintiff was also seen by Dr. Woodall on July 30, 2007, in the chronic care clinic, where he was treated for Hepatitis C, cirrhosis, and asthma. *Id.* at 47; [45-2] at 33. Dr. Woodall prescribed Plaintiff a one-week supply of Prednisone and Ibuprofen 600 mg and a six-month supply of Albuterol. *See* Ex. A to Motion [45-2] at 17. Further, Plaintiff was already consistently taking Lactulose, which Dr. Woodall had previously prescribed on April 5, 2007, to continue through January 26, 2008. *Id*. at 21. Lactulose is "a synthetic disaccharide used as a cathartic and to enhance the excretion of ammonia in treatment of hepatic encephalopathy." *Dorland's Medical Dictionary*: lactulose, http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/five/000057082.htm (last visited June 8, 2009). Hepatic encephalopathy is "a condition, usually occurring secondary to advanced liver disease, marked by disturbances of consciousness that may progress to deep coma (hepatic coma), psychiatric changes of varying degree, flapping tremor, and fetor hepaticus." *Dorland's Medical Dictionary*: hepatic encephalopathy, http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/three/000035095.htm#000035095 (last visited June 8, 2009).

On September 13, 2007, Plaintiff submitted a sick-call request stating he was in severe pain, and that his "liver and stomach [were] very aggitated (sic)." *See* Ex. A to Motion [45-2] at 47. Plaintiff was seen that day by Dr. McCleave. After Dr. McCleave examined him, he ordered tests (presumably blood work) and prescribed him Ibuprofen 400 mg for pain. *Id*. at 47-48.

amount to deliberate indifference.[9] *See Daniels*, 474 U.S. at 333-34. While the court is sympathetic to Plaintiff's medical condition, Plaintiff is reminded that prisoners are not entitled to the "best" medical treatment available. *See McMahon*, 583 F.2d at 174.

Based on the foregoing, Dr. Woodall is entitled to judgment as a matter of law on Plaintiff's claims against him.

<u>Mr. Hatten</u>

Plaintiff claims that in March 2006,[10] Mike Hatten, the Medical Director at SMCI,[11] failed to provide him with proper treatment for his liver problems. Plaintiff claims that Mr. Hatten called him into his office because his family had called him about his medical condition. He claims that he heard Mr. Hatten tell his family that he would make sure Plaintiff received the best treatment they could offer him. However, Plaintiff claims Mr. Hatten never took any action to ensure that he received proper medical treatment. (Tr. at 9-10; 12-13.)

The record reflects that Plaintiff has been treated by multiple doctors on multiple occasions for his various ailments, including cirrhosis of the liver and Hepatitis C. *See* Exs. A-C to Motion [45]. Plaintiff has failed to show that Mr. Hatten was deliberately indifferent to a serious medical need. *See Davidson*, 91 Fed. Appx. at 964. There is no supervisory or

---

[9] Notably, Dr. Crist at Forrest General Hospital recommended that Plaintiff continue taking Vicodin. *See* Ex. A [45-5] at 8.

[10] While Plaintiff testified that he spoke with Mr. Hatten in March of 2006, he is apparently mistaken about the date; Plaintiff was not taken into MDOC custody until April 21, 2006, and did not arrive at SMCI until approximately May 30, 2006. *See* Tr. at 9; Ex. A to Motion [45-3] at 15, [45-4] at 19; http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=86389.

[11] Based on the information before the court, Mr. Hatten is not a medical doctor. (Tr. at 2-3.)

respondeat superior liability under Section 1983.  *See Oliver,* 276 F.3d at 742 & n.6.  Accordingly, Mr. Hatten cannot be held responsible for Dr. Woodall's, or any other SMCI employee's failure to provide adequate medical treatment to Plaintiff.  *See Thompkins*, 828 F.2d at 304 (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

Plaintiff has failed to demonstrate that Mr. Hatten was personally involved in the alleged denial and/or delay of adequate medical treatment, or that Mr. Hatten implemented an unconstitutional policy that causally resulted in an injury to Plaintiff.  *See Johnson*, 2002 WL 243359, at *1; *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (holding that medical director at Parchman was not deliberately indifferent to plaintiff's serious medical needs, where director was not one of plaintiff's treating physicians and had limited contact with plaintiff); *Hailey v. Savers*, 240 Fed. Appx. 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical administrator because plaintiff "failed to allege specific facts to demonstrate that [administrator] had personal involvement in placing [plaintiff] in a job assignment that posed a substantial risk of harm or that [administrator] implemented policies to physically harm [plaintiff]").  Indeed, the only evidence of Mr. Hatten's limited involvement with Plaintiff's medical treatment (a phone conversation with his family and a representation that Plaintiff would receive the best medical treatment that he could provide) is an apparent attempt to ensure he received adequate medical treatment.  Even if Mr. Hatten were negligent in carrying out his duties, this does not meet the high standard of deliberate indifference.  *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff]

11

to a doctor to treat his shoulder injury"); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2nd Cir. 2000) (holding that the failure of the non-doctor defendants– Warden and Health Services Administrator– to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful). The record is clear that Plaintiff consistently received treatment for his various ailments after his alleged meeting with Mr. Hatten in 2006, including at least two offsite referrals. *See* Exs. A-C to Motion [45]. The fact that Plaintiff may not have gotten the "best" medical treatment, or that he disagrees with the treatment he received does not amount to a constitutional violation. *See McMahon*, 583 F.2d at 174; *Norton*, 122 F.3d at 292.

Based on the foregoing, Mike Hatten is entitled to judgment as a matter of law on Plaintiff's claims against him.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [45] is GRANTED, and this action is hereby dismissed with prejudice.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 8th day of June, 2009.

s/ Michael T. Parker
United States Magistrate Judge
